UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| **LASER & SURGERY CENTER OF ACADIANA L L C** | **CASE NO. 6:21-CV-01236** |
| **VERSUS** | **JUDGE JUNEAU** |
| **OHIO CASUALTY INSURANCE CO** | **MAGISTRATE JUDGE CAROL B. WHITEHURST** |

## REPORT AND RECOMMENDATION

Before the Court is the Motion to Dismiss pursuant to F.R.C.P. Rule 12(b)(6) filed by Defendant, Ohio Casualty Insurance Co. (Rec. Doc. 9). Plaintiff, Laser & Surgery Center of Acadiana, LLC, opposed the Motion (Rec. Doc. 12), and Ohio Casualty replied (Rec. Doc. 16). The Motion was referred to the undersigned magistrate judge for review, report, and recommendation in accordance with the provisions of 28 U.S.C. §636 and the standing orders of this Court. Considering the evidence, the law, and the arguments of the parties, and for the reasons explained below, the Court recommends that Ohio Casualty's Motion to Dismiss Motion be granted.

## Factual Background

The Covid-19 pandemic and the federal, state, and local governments' responsive actions are well-known. Like most, if not all, other government leaders, Louisiana Governor John Bel Edwards issued a series of executive orders directing

all but essential workers to stay home as the pandemic raged. (25 JBE 2020, March 11, 2020, as supplemented multiple times thereafter[1]). The stay-home orders have prompted a wave of litigation by business owners seeking compensation from their insurers for business interruption and losses caused by their customers', clients', and patients' inability to conduct business. This is one such suit.

    Plaintiff, an optometrist group, filed a Petition for Declaratory Judgment in state court against Ohio Casualty, its business insurer, for alleged losses sustained as a result of having to close its business due to Governor Edwards's Covid-19 stay-home orders. (Rec. Doc. 1-1). Ohio Casualty removed the case to this Court. (Rec. Doc. 1). Ohio Casualty seeks dismissal of Plaintiff's suit on the grounds that the Ohio Casualty policy does not provide coverage for the alleged loss of use or business interruption. Ohio Casualty's primary defense is that the Covid-19 virus did not cause a covered loss or property damage to Plaintiff's business. Plaintiff's claims and Ohio Casualty's defenses are not novel in the post-pandemic legal environment.

---

[1] See e.g. https://gov.louisiana.gov/assets/ExecutiveOrders/20-1222-210-JBE-2020-AS.pdf.

## Law and Analysis

### I.     Applicable Law.

"In diversity cases, a federal court must apply federal procedural rules and the substantive law of the forum state." *Hyde v. Hoffmann-La Roche, Inc.,* 511 F.3d 506, 510 (5th Cir. 2007).

When considering a motion to dismiss for failure to state a claim under F.R.C.P. Rule 12(b)(6), the district court must limit itself to the contents of the pleadings, including any attachments and exhibits thereto. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir.2000); *U.S. ex rel. Riley v. St. Luke's Episcopal Hosp.,* 355 F.3d 370, 375 (5th Cir.2004). The court must accept all well-pleaded facts as true and view them in the light most favorable to the plaintiff. *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir.2007) (internal quotations omitted) (quoting *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir.2004)); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir.1996). Conclusory allegations and unwarranted deductions of fact are not accepted as true, *Kaiser Aluminum & Chemical Sales v. Avondale Shipyards*, 677 F.2d 1045, 1050 (5th Cir. 1982) (citing *Associated Builders, Inc. v. Alabama Power Company*, 505 F.2d 97, 100 (5th Cir. 1974)); *Collins v. Morgan Stanley*, 224 F.3d at 498. To survive a Rule 12(b)(6) motion, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell AtlanOhio Casualty*, 127 U.S.

at 570. The allegations must be sufficient "to raise a right to relief above the speculative level," and "the pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." *Id.* at 555 (quoting 5 C. Wright & A. Miller, Federal PracOhio Casualtye and Procedure § 1216, pp. 235-36 (3d ed. 2004)).

The Court must apply Louisiana substantive law relative to interpretation of insurance contracts. The Fifth Circuit summarized applicable Louisiana insurance interpretation law as follows:

> "Under Louisiana law, insurance policies are contracts between the parties and 'should be construed by using the general rules of interpretation of contracts set forth in the Louisiana Civil Code.'" "When interpreting a contract, the court must discern the parties' common intent." "The parties' intent as reflected by the words in the policy determine[s] the extent of coverage."
>
> Where the terms of the contract are clear and explicit and do not lead to absurd consequences, no further interpretation may be made in search of the intent of the parties." "'[W]ords of a contract must be given their generally prevailing meaning,' but '[w]ords of art and technical terms must be given their technical meaning when the contract involves a technical matter.'" "Each provision in [the] contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole."
>
> "An insurance policy should not be interpreted in an unreasonable or a strained manner so as to enlarge or restrict its provisions beyond what is reasonably contemplated by its terms or so as to achieve an absurd conclusion." "If the policy wording at issue is clear and unambiguously expresses the parties' intent, the insurance contract must be enforced as written."

4

> "If the insurance contract terms are ambiguous, these ambiguities are generally strictly construed against the insurer and in favor of coverage." "This rule of strict construction 'applies only if the ambiguous policy provision is susceptible to two or more reasonable interpretations; for the rule of strict construction to apply, the insurance policy must be not only susceptible to two or more interpretations, but each of the alternative interpretations must be reasonable.'"

*Richard v. Anadarko Petroleum Corp.,* 850 F.3d 701, 713 (5th Cir. 2017). (cleaned up).

Considering the foregoing legal precepts, the Court shall consider whether Plaintiff's claims justify a finding of coverage under his Ohio Casualty policy.

## II. <u>Whether the Ohio Casualty policy covers Plaintiff's claims for direct physical loss or damage.</u>

Plaintiff seeks coverage under the Business Income and Extra Expense Coverage Form to his Ohio Casualty policy.[2] The insurance contract provides coverage for "direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss." (Rec. Doc. 9-2, p. 97). The Business Income and Extra Expense Coverage Form provides:

---

[2] Ordinarily, in ruling on a Rule 12(b)(6) motion, the Court is limited to the allegations of the complaint and any exhibits attached thereto; however, the court may also consider documents attached to the defendant's motion if they are referenced in the complaint and central to the plaintiff's claims. *In re Katrina Canal Breaches Litig.,* 495 F.3d 191, 205 (5th Cir. 2007). The OHIO CASUALTY policy is referenced in the complaint and central to Plaintiff's claims.

5

> 1. Business Income
>
> . . . .
>
> We will pay for the actual loss of Business Income you sustain due to the necessary suspension of your "operations" during the "period of restoration". The suspension must be caused by direct physical loss of or damage to property at premises which are described in the Declarations and for which a Business Income Limit of Insurance is shown in the Declarations. The loss or damage must be caused by or result from a Covered Cause of Loss…
>
> 2. Extra Expense
>
> . . . .
>
> b. Extra Expense means necessary expenses you incur during the "period of restoration" that you would not have incurred if there had been no direct physical loss or damage to property caused by or resulting from a Covered Cause of Loss.
>
> We will pay Extra Expense (other than the expense to repair or replace property) to:
>
> (1) Avoid or minimize the "suspension" of business and to continue operations at the described premises or at replacement premises or temporary locations, including relocation expenses and costs to equip and operate the replacement location or temporary location.
>
> (2) Minimize the "suspension" of business if you cannot continue 'operations'. We will also pay Extra Expense to repair or replace property, but only to the extent it reduces the amount of loss that otherwise would have been payable under this Coverage Form.
>
> (Rec. Doc. 9-2, p. 112-13).

The key disputed issue is whether Plaintiff sustained "direct physical loss of or damage" to its property. Ohio Casualty contends Plaintiff's allegations do not

show that its property sustained actual physical damage or loss due to the Covid-19 virus.

Multiple courts within the Fifth Circuit have addressed this issue and found that the presence of the virus in a building did not cause or equate to physical damage or loss sufficient to trigger coverage. See e.g. *Lafayette Bone & Joint Clinic, Inc. v. Transportation Ins. Co.,* No. 6:21-CV-00317, 2021 WL 1740466, at *3 (W.D. La. May 3, 2021); *Diesel Barbershop LLC v. State Farm Lloyds*, 479 F.Supp.3d 353, 360 (W.D. Tex. 2020); *Terry Black's Barbecue, LLC v. State Auto. Mut. Ins. Co.*, –––– F. Supp. 3d. ––––, 2021 WL 972878, at *5 (W.D. Tex. 2021); and *St. Pierre v. Transportation Ins. Co.,* No. 6:20-CV-01660, 2021 WL 1709380, at *3 (W.D. La. Apr. 29, 2021), citing cases.

This Court agrees with the foregoing line of cases that the presence of the virus does not constitute physical loss or damage sufficient to trigger coverage. This Court agrees with Judge Cain's analysis of a similar policy involving nearly identical claims:

> This court finds no ambiguity in the requirement that the premises suffer a physical loss or damage (regardless of whether "physical" modifies just loss), or in its implications for coverage in this matter. As the Fifth Circuit has noted, "property insurance coverage is triggered by some threshold concept of physical loss or damage to the covered property." *Hartford Ins. Co. of Midwest v. Mississippi Valley Gas Co.*, 181 F. App'x 465, 470 (5th Cir. 2006). It has also observed that "[t]he language 'physical loss or damage' strongly implies that there was an initial satisfactory state that was changed by some external event into an unsatisfactory state—for example, the car was undamaged

7

before the collision dented the bumper." *Trinity Indus. Inc., v. Ins. Co. of N. Am.*, 916 F.2d 267, 270–71 (5th Cir. 1990). To this end courts within the Fifth Circuit have required a "distinct, demonstrable, physical alteration of the property" to trigger coverage. *Diesel Barbershop LLC v. State Farm Lloyds*, 479 F.Supp.3d 353, 360 (W.D. Tex. 2020) (quoting *Hartford*, 181 F. App'x at 470). Accordingly, every district court within the circuit to address the issue has determined that a building's exposure to the coronavirus does not meet this requirement. *Id.*; *see also Terry Black's Barbecue, LLC v. State Auto. Mut. Ins. Co.*, ––– F. Supp. 3d. –––, 2021 WL 972878, at *5 (W.D. Tex. 2021). LBJC fails to advance any new argument compelling the court to depart from this interpretation, and therefore cannot state a plausible claim for relief under the Business Income/Extra Expense endorsements.

*Lafayette Bone & Joint Clinic, Inc.,* 2021 WL 1740466, at *3.

Plaintiff cites two cases for the adverse proposition: *Studio 417, Inc. v. Cincinnati Ins. Co.,* 478 F. Supp. 3d 794, 800 (W.D. Mo. 2020) and *Blue Springs Dental Care, LLC v. Owners Ins. Co.,* 488 F. Supp. 3d 867, 873 (W.D. Mo. 2020). The Court finds these authorities unpersuasive in light of the above-cited jurisprudence from district courts within the Fifth Circuit.

Plaintiff cites *Diesel Barbershop LLC v. State Farm Lloyds* for its discussion that physical loss could conceivably result without tangible destruction, such as in the case of contamination by ammonia, E. coli, and/or carbon monoxide. See *Diesel Barbershop, LLC v. State Farm Lloyds*, No. 5:20-CV-461-DAE, 2020 WL 4724305 (W.D. Tex. Aug. 13, 2020). However, *Diesel Barbershop* went on to find that Covid 19 cases are distinguishable and do not result in the requisite physical loss or damage. *Id*. Further the nature of certain contaminants like ammonia and carbon

8

monoxide render a property at least temporarily useless because of the inability to safely access the property. In the case of Covid 19, simple sanitation measures effectively decontaminate the property without the necessity of evacuation. Thus, the Court finds that Plaintiff's failure to allege that it sustained actual, quantifiable physical loss or damage precludes coverage under the Business Income Coverage Form.

### III. Whether the Civil Authority provision covers Plaintiff's claims.

Plaintiff also seeks coverage under the Civil Authority provision of the Business Income Coverage Form. This provision provides in pertinent part:

**a. Civil Authority**

In this Additional Coverage – Civil Authority, the described premises are premises to which this Coverage Form applies, as shown in the Declarations. When a Covered Cause of Loss causes damage to property other than property at the described premises, we will pay for the actual loss of Business Income you sustain and necessary Extra Expense caused by action of civil authority that prohibits access to the described premises, provided that both of the following apply:

(1) Access to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage, and the described premises are within that area but are not more than one mile from the damaged property; and

(2) The action of civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss that caused the damage, or the action is taken to enable a civil authority to have unimpeded access to the damaged property.

(Rec. Doc. 9-2, p. 113).

Other district courts in this circuit have refused to apply civil authority endorsements in nearly identical cases, because Governor Edwards's stay-home orders did not prohibit the plaintiffs from accessing their premises and/or because the plaintiffs could not show physical loss or damage. *Pierre*, 2021 WL 1709380; *Lafayette Bone & Joint Clinic, Inc.,* No. 2021 WL 1740466; *Q Clothier New Orleans LLC v. Twin City Fire Ins. Co.,* No. CV 20-1470, 2021 WL 1600247, at *11 (E.D. La. Apr. 23, 2021); *Muriel's New Orleans, LLC v. State Farm Fire & Cas. Co.,* No. CV 20-2295, 2021 WL 1614812, at *12 (E.D. La. Apr. 26, 2021). Likewise, Plaintiff's allegations in this case do not show that it was prohibited from accessing the premises due to direct physical loss to either its own property or immediately surrounding property. In fact, Plaintiff's allegations indicate that some use of the property was permitted, though at reduced operations. (See Rec. Doc. 1-1, ¶5; 17; 40).

### IV. Whether the Virus Exclusion precludes Plaintiff's claims.

Finally, Ohio Casualty contends the policy excludes coverage for "loss or damage caused by or resulting from any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease." (Rec. Doc. 9-2, p. 129). The Court agrees that the virus exclusion unambiguously excludes coverage for Plaintiff's claims for loss of use caused by the Covid 19 virus. Multiple courts within the Fifth Circuit agree. See e.g. *Real Hosp., LLC v. Travelers Cas. Ins.*

10

*Co. of Am.*, 499 F. Supp. 3d 288, 297 (S.D. Miss. 2020); *Vizza Wash, LP v. Nationwide Mut. Ins. Co.,* 496 F. Supp. 3d 1029, 1040 (W.D. Tex. 2020); *Muriel's New Orleans, LLC,* 2021 WL 1614812.

Nonetheless, Plaintiff contends that it does not allege that the virus was present in its property. Rather, Plaintiff claims that its alleged damages resulted from its inability to conduct business due to the stay-home orders. (Rec. Doc. 12, p. 19). Acceptance of this argument renders the Civil Authority provision, discussed above, the only potentially available avenue for coverage. As discussed above, Plaintiff cannot show coverage under the Civil Authority provision. Accordingly, absent facts indicating coverage under the policy, the Court finds that Plaintiff has failed to state a claim upon which relief can be granted.

## **Conclusion**

For the reasons discussed herein, the Court recommends that Ohio Casualty Insurance Company's Motion to Dismiss (Rec. Doc. 9) be GRANTED.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen days from service of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen days after being served with of a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except upon grounds of plain error. See *Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. §636(b)(1).

THUS DONE in Chambers, Lafayette, Louisiana on this 14th day of June, 2021.

CAROL B. WHITEHURST
UNITED STATES MAGISTRATE JUDGE